## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATURAL RESOURCES DEFENSE )
COUNCIL, *et al*., )
)
     Plaintiffs, )
) Case No. 1:17-cv-02606 (TSC)
v. )
)
DONALD J. TRUMP, in his official )
capacity as President of the United States, )
*et al*., )
)
     Defendants. )
)

## FEDERAL DEFENDANTS' MOTION TO TRANSFER CASE
## TO THE DISTRICT OF UTAH

Pursuant to 28 U.S.C. § 1404(a), President Donald J. Trump, Secretary of the Interior

Ryan Zinke, Deputy Director of the Bureau of Land Management ("BLM") Bryan Steed,

Secretary of Agriculture Sonny Perdue, and Chief of the U.S. Forest Service ("USFS") Tony

Tooke (collectively "Defendants"), hereby move to transfer this action to the United States

District Court for the District of Utah.  This case concerns President Trump's Proclamation

modifying the boundaries of the Bears Ears National Monument, located in Utah.  Venue is

therefore permissible in Utah, and there is a strong local interest in having this lawsuit

adjudicated there.  Transfer is warranted because that strong local interest outweighs the District

of Columbia's tie to the claims and Plaintiffs' selection of this forum.  For these reasons and

others set forth in the accompanying Memorandum, the Court should transfer this matter to the

District of Utah.

Defendants are similarly moving to transfer *Hopi Tribe v. Trump*, No. 1:17-cv-02590

(D.D.C. filed Dec. 4, 2017), and *Utah Diné Bikéyah v. Trump*, No. 1:17-cv-02605 (D.D.C. filed

Dec. 6, 2017), which involve the same Proclamation at issue in this case, as well as *The*

1

*Wilderness Society v. Trump*, No. 1:17-cv-02587 (D.D.C. filed Dec. 4, 2017) and *Grand Staircase Escalante Partners v. Trump*, No. 1:17-cv-02591-TSC (D.D.C. filed Dec. 4, 2017), which involve similar claims directed at the President's recent Proclamation modifying the boundaries of the Grand Staircase-Escalante National Monument.  Except for the differences between the two monuments and their accompanying proclamations, the memoranda in support of the respective motions are largely similar.

Plaintiffs in all cases have stated their intent to oppose the motions.

Respectfully submitted this 18th day of January, 2018,

JEFFREY H. WOOD
Acting Assistant Attorney General

  */s/ Romney S. Philpott*
Romney S. Philpott
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th St., #370
Denver, CO 80202
Phone:  303-844-1810
Fax:  303-844-1350
E-mail:  Romney.Philpott@usdoj.gov

Judith E. Coleman
U.S. Department of Justice,
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Phone:  202-514-3553
Fax:  202-305-0506
Email:  Judith.Coleman@usdoj.gov

Attorneys for Federal Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:17-cv-02606 (TSC) |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO
TRANSFER CASE TO THE DISTRICT OF UTAH**

This case challenging the modification of the boundaries of the Bears Ears National Monument ("Monument") should be decided in Utah, where the Monument is located. The Presidential Proclamation modifying the Monument was signed in Utah; the implementation of the Proclamation will occur in Utah; and that implementation will most directly affect Utah residents. Courts in this District have regularly transferred cases addressing federal lands in Utah to the District of Utah. *See W. Watersheds Project v. Jewell* ("*Jewell*"), 69 F. Supp. 3d 41 (D.D.C. 2014) (transferring to the District of Utah a case concerning Capitol Reef National Park in Utah and noting similar cases). Because the interests of Utah and its residents outweigh the Plaintiffs' choice of this forum, this Court should follow the "well-worn path of other courts in this district," *id.* at 44, and transfer this case to Utah—the forum the factors relevant to transfer pursuant to 28 U.S.C. § 1404(a) clearly favor.

1

## BACKGROUND

On December 4, 2017, President Trump issued a Presidential Proclamation Modifying the Bears Ears National Monument, Proclamation No. 9681 (Dec. 4, 2017), noticed at 82 Fed. Reg. 58,081, 58,081 (Dec. 8, 2017).  In his Proclamation, the President "proclaim[ed] that the boundaries of the Bears Ears National Monument are hereby modified and reduced to those lands and interests in land owned or controlled by the Federal Government" within two "modified monument areas," to be known as the Indian Creek and Shash Jáa units.  82 Fed. Reg. at 58,085. The monument areas include land managed by the Bureau of Land Management ("BLM"), an agency of the Department of the Interior, as well as land managed by the United States Forest Service ("USFS"), an agency of the Department of Agriculture.  The President determined that the modified boundaries, encompassing approximately 201,876 acres, comprised "the smallest area compatible with the proper care and management of the objects to be protected" by the Monument designation.  *Id*.; *see also* 54 U.S.C. § 320301(b).  All of the land remaining in the Monument—and all of the land now excluded from it—is located within the state of Utah.

The President made the announcement of his Proclamation modifying the Monument at the Utah state capitol in Salt Lake City, accompanied by the Governor of Utah and the congressional delegation of that state.  *See* Remarks by President Trump on Antiquities Act Designations (Dec. 4, 2017), *available at* https://www.whitehouse.gov/briefings-statements/remarks-president-trump-antiquities-act-designations.  In his remarks, the President stressed the significance that local interest in the Monument played in his decision.  He observed that the timeless bond between the people of Utah and the outdoors "should not be replaced with the whims of regulators thousands and thousands of miles away."  *Id.*  He observed that, because the "families and communities of Utah know and love this land the best," they also know best

2

how to protect and conserve it for future generations.  *Id.*  These sentiments were echoed by

Governor of Utah Gary Herbert, who stated that the President's proclamation would give

Utahans "a voice in the process of determining appropriate uses of these public lands that we

love" and open dialogue for "thoughtful, long-term protection of these federal lands."  The

President's Speech in Salt Lake City, UT (Dec. 5, 2017), *available at*

https://www.whitehouse.gov/briefings-statements/presidents-speech-salt-lake-city-ut/.

On December 6, 2017, Natural Resources Defense Council and ten other environmental

groups ("Plaintiffs") filed the Complaint in this case.  *See* Compl. for Injunctive & Declaratory

Relief ("Compl."), ECF No. 1.  One Plaintiff, Southern Utah Wilderness Alliance ("SUWA"),

has its headquarters in Salt Lake City, Utah, while three others, National Parks Conservation

Association, The Wilderness Society and Defenders of Wildlife, have their headquarters in

Washington, D.C.  The remaining Plaintiffs are generally headquartered in the Western United

States.  *See id.*, at 1.  Nearly all of the Plaintiffs allege that they have members in Utah, and they

all allege organizational or member activities occurring in Utah.  *Id.* ¶¶ 18, 21, 25, 29, 34-35, 37,

39, 40-43, 45-46, 48-49, 52.[1]

## ARGUMENT

### A.     Legal Standard on a Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).  The decision to transfer requires "an individualized, case-by-case

consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23

---

[1] On December 22, 2017, Defendants filed a motion to consolidate this case with *Hopi Tribe v. Trump*, Case No. 1:17-cv-02590 and *Utah Diné Bikéyah v. Trump*, Case No. 1:17-cv-02605, both of which assert similar claims against the same Defendants.  *See* Notice of Filing, ECF No. 11.

(1988). "To warrant transfer under § 1404(a), the movant must first show that the plaintiff could originally have brought the case in the transferee district." *Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs* ("*PSC*"), 893 F. Supp. 2d 49, 53 (D.D.C. 2012) (internal citations and quotations omitted). Next, the movant must "show that considerations of convenience and the interest of justice weigh in favor of transfer." *Id.* (internal citations and quotation marks omitted). This "second inquiry calls on the district court to weigh in the balance a number of case-specific factors, related to both the public and private interests at stake." *Id.* (internal citations and quotation marks omitted).

This Court articulated the "private interest" and "public interest" factors in *Bader v. Air Line Pilots Association*, 63 F. Supp. 3d 29 (D.D.C. 2014) (Chutkan, J.). First,

> [t]he Court considers six private interest factors when deciding whether to transfer a case: "1) the plaintiff's choice of forum; 2) the defendant's choice of forum; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts; and 6) the ease of access to sources of proof."

*Id.* at 34 (quoting *Sheffer v. Novartis Pharm. Corp.*, 873 F. Supp. 2d 371, 375 (D.D.C. 2012)). In the next part of the inquiry,

> [t]he Court . . . considers the public interest factors: "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home."

*Id.* at 36 (quoting *Foote v. Chu*, 858 F. Supp. 2d 116, 123 (D.D.C. 2012)). *See also WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 922 F. Supp. 2d 51, 54 (D.D.C. 2013) (public interest factors determine whether transfer is "in the interest of justice" under § 1404(a)). Ultimately, the District of Utah's strong local interest in the Monument and decisions that affect it outweighs any connections to the District of Columbia, making transfer appropriate. *See, e.g., Jewell*, 69 F. Supp. 3d at 44 (collecting cases).

4

**B.    Venue is Permissible in the District of Utah.**

In considering a motion to transfer, this Court first determines whether the action "could originally have been brought" in the transferee district. *PSC*, 893 F. Supp. 2d at 53. Under 28 U.S.C. § 1391, "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority" may be brought in "any judicial district in which . . . a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e)(1)(B). This action could have been brought in the District of Utah because that is where the lands at issue are located.

**C.    The Public Interest Factors Support Transfer to Utah Because of the Strong Local Interest.**

The public interest factors include: "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Bader*, 63 F. Supp. 3d at 36. These factors should receive dispositive weight in this case because there is a strong local interest in deciding this case in Utah.

1.    <u>This localized controversy should be decided in Utah.</u>

The "arguably most important" of the public interest factors is "the local interest in deciding local controversies at home." *PSC*, 893 F. Supp. 2d at 54 (internal quotation marks omitted); *accord, e.g., Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 116 (D.D.C. 2015). "This rationale applies to controversies involving federal decisions that impact the local environment, and to controversies requiring judicial review of an administrative decision." *W. Watersheds Project v. Pool* ("*Pool*"), 942 F. Supp. 2d 93, 102 (D.D.C. 2013) (quoting *Sierra*

5

*Club v. Flowers*, 276 F. Supp. 2d 62, 70 (D.D.C. 2003)).  The residents of Utah have a "compelling interest . . . in having this localized controversy decided at home" because Plaintiffs' claims involve management of land in Utah.  *Trout Unlimited v U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996).

The local interest factor carries particular weight in a transfer analysis because it ensures a case can be heard where the people who are most directly affected by the actions in dispute are located.  "[T]he interests of justice are promoted when a localized controversy is resolved in the region it impacts."  *Pool*, 942 F. Supp. 2d at 102 (citing *Oil, Chem. & Atomic Workers Local Union v. Nat'l Labor Relations Bd.*, 694 F.2d 1289, 1300 (D.C. Cir. 1982)).  *See also Trout Unlimited*, 944 F. Supp. at 19–20  (suits involving "environmental regulation, and local wildlife—matters that are of great importance in the [State]—should be resolved in the forum where the people whose rights and interests are in fact most vitally affected" are located) (internal quotation marks omitted)).  Courts in this District have repeatedly emphasized that "[l]and is a localized interest because its management directly touches local citizens."  *Pool*, 942 F. Supp. 2d at 102 (quoting *S. Utah Wilderness All. ("SUWA") v. Norton*, 315 F. Supp. 2d 82, 88 (D.D.C. 2004)).  Thus, "courts in this District have routinely found it appropriate to transfer cases involving land and local wildlife to the local forum."  *W. Watersheds Project v. Tidwell* ("*Tidwell*"), No. 17-CV-1063 (KBJ), 2017 WL 5900076, at *8 (D.D.C. Nov. 20, 2017) (granting motion to transfer case involving elk feeding program on Bridger-Teton National Forest to Wyoming) (citing *Trout Unlimited*, 944 F. Supp. at 19-20 (transferring suit regarding national forest to District of Colorado)); and *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42 (D.D.C. 2006) (transferring suit regarding Everglades to Florida)); *see also, e.g.*, *SUWA v. Lewis*, 845 F.

Supp. 2d 231, 237 (D.D.C. 2012) (transferring case concerning resource management plans for lands located in Utah).

The local interest in this case is indisputable: this action concerns public land in Utah, the use and enjoyment of that land by Utah residents, including tribal members, and the regulation of that land by federal agencies in Utah. The strong local interest in Utah public land cases has been recognized time and time again by the courts of this District. In *Pool*, the court granted a motion to transfer a case challenging grazing management in the nearby Grand Staircase-Escalante National Monument and the adjacent Glen Canyon National Recreation Area in part because "the District of Utah possesses a significant and predominant interest in this suit given the impact its resolution will have upon the affected lands, wildlife, and people of that district." 942 F. Supp. 2d at 102 (internal quotation marks and citation omitted). The following year, in *Jewell*, 69 F. Supp. 3d 41, the court transferred a case challenging the National Park Service's decisions permitting grazing in a nearby national park. In doing so, the court relied upon the reasoning of several earlier decisions holding that Utah's interest in the case outweighed the plaintiffs' choice of forum. *See id.* at 44. For example, in *SUWA v. Norton*, No. CIV.A.01-2518 (CKK), 2002 WL 32617198 (D.D.C. June 28, 2002), the court transferred an action challenging the BLM's sale and issuance of certain oil and gas leases in Utah, observing that the land at issue was located entirely within Utah, parcels of land were administered by the BLM's field offices in Utah, and any decision regarding the lands would have an impact most directly on the residents of Utah. *Id.* at *3. *See also, e.g.*, *SUWA v. Norton*, 315 F. Supp. 2d at 89 (similar).

The reasoning in *Pool*, *Jewell*, and the *SUWA* cases regarding the strong interest in deciding local controversies at home extends to this case. The Monument is located entirely in Utah; the lands excluded from the Monument are located entirely in Utah; and management of

both the Monument and former Monument lands will be administered locally: (1) for the BLM, by the Canyon Country District Office, located in Moab, Utah, and (2) for the USFS, by the Forest Service Manti-La Sal National Forest Supervisor's Office, located in Price, Utah.  Future management actions taken by those agencies may relate to grazing, as in *Pool* and *Jewell*, or to leasing for mineral exploration, as in the *SUWA v. Norton* decisions.  Those future management actions will most directly impact Utah residents.  In fact, that is precisely what President Trump stressed in his remarks announcing the Proclamation at the Utah state capitol: that previous Monument designations were made "at the expense of the people who actually live here, work here, and make this place their home."  Remarks by President Trump on Antiquities Act Designations (Dec. 4, 2017), *available at* https://www.whitehouse.gov/briefings-statements/remarks-president-trump-antiquities-act-designations.  The President's recognition of the importance of the Monument lands, and former Monument lands, to the people of Utah, and the direct effect this dispute has on the people of Utah, make this factor weigh even more heavily in favor of transfer than it did in *SUWA v. Norton* cases.

Courts in this District have often concluded that national interest in a case is outweighed by the intensity of the local interest.  The fact that the challenged decision here may have national importance, or that the Plaintiffs may have a national membership, does not change the inherently localized nature of these interests.  In *SUWA v. Norton*, 315 F. Supp. 2d at 82, for example, the court relied on Utah's localized interest in the case, notwithstanding that Plaintiffs had "worked on behalf of hundreds of thousands of members across the country" for years to protect the Utah lands at issue, that "[t]housands of plaintiffs' members ha[d] made their opposition to the leases at issue known to their representatives in Congress," and that the lands at issue had been the focus of "numerous articles and editorials in national publications."  *Id.* at 88.

The same holds true here: the land at issue is a localized Utah interest because its management directly touches local residents, regardless of the national advocacy measures taken by the Plaintiffs. *Id.* And as explained in *Alaska Wilderness League v. Jewell*, decisions affecting land remain cases of local interest even where, as here, federal land is at issue. *See* 99 F. Supp. 3d at 117.

Nor does the natural beauty of these lands, as detailed in Plaintiffs' Complaint, detract from the localized interest in this case. The "objective natural beauty" of a location "does not suffice to create a national interest that outweighs Utah's strong local interest in having local controversies decided within its borders." *SUWA v. Lewis*, 845 F. Supp. 2d at 238. *See also, e.g.*, *Nat'l Wildlife Fed'n*, 437 F. Supp. 2d at 49–50 (holding that the Everglades' location in Florida outweighed the national interest in the natural beauty of the area). Because this case is "fundamentally about" the lands and resources of Utah, there is a compelling localized interested in deciding this case within Utah, closest to the people it most vitally affects. *WildEarth Guardians v. U.S. Fish & Wildlife Serv.*, No. 12-CV-3085-AP, 2013 WL 136204, at *2 (D. Colo. Jan. 9, 2013).

While this case may involve more land—and potentially more national attention—than other cases concerning federal public lands, ultimately this remains a case about the management of land *in Utah.* By its terms, the proclamation challenged addresses only lands in Utah, and does not set forth a federal program or nationwide plan or policy. *See Tidwell*, 2017 WL 5900076, at *10 (distinguishing local land case from prior cases involved federal programs, giving them a "national" aura); *Alaska Wilderness League*, 99 F. Supp. 3d at 117 ("[E]ven accepting that this case touches upon some national concerns, it is beyond cavil that the regulation most *directly* affects Alaskan lands, livelihoods, waters, and wildlife."). Notably,

virtually all of the injuries alleged by Plaintiffs here relate to their use and enjoyment of land in Utah.  *See, e.g.*, Compl. ¶¶ 134-75.  Such injuries could manifest only if Plaintiffs' members visit the Monument in Utah, and they would therefore occur only (if it all) in Utah.  Without asserting plans to return to Utah, Plaintiffs would not be able allege associational standing to challenge these actions.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).[2]

Moreover, Utah's Congressional delegation, state government, and county commissioners have made clear that this case involves an issue of significant local importance. As Plaintiffs themselves allege, members of Utah's Congressional delegation and state government have demonstrated significant interest in the boundaries of the Monument.  Compl. ¶ 116.  *See also* The President's Speech in Salt Lake City, UT (Dec. 5, 2017), *available at* https://www.whitehouse.gov/briefings-statements/presidents-speech-salt-lake-city-ut (providing remarks of various Utah officials and representatives).

The strong localized interest in having this case decided in Utah is indisputable, and it is ultimately determinative of the public interest analysis here, as detailed below.

> 2.    The other public interest factors do not counterbalance the strong local interest in transferring this case to the Utah forum.

The other public interest factors are either neutral or uncompelling when viewed against the strong local interest that has consistently been found to warrant transfer, as detailed above.

The familiarity of law factor is neutral.  Courts in this District and the District of Utah are equally capable of determining the federal statutory and constitutional issues raised by this case. *See Alaska Wilderness League*, 99 F. Supp. 3d at 116 ("The general rule is that all federal courts are competent to decide federal issues correctly." (internal quotation marks omitted)); *SUWA v.*

---

[2] By noting these allegations, Defendants do not concede that Plaintiffs have standing.

*Norton*, 315 F. Supp. 2d at 89 (noting that District of Utah had "heard similar matters" and granting motion to transfer based on local interest and Utah court's "competence" to resolve matters under environmental statute).[3]

As to court congestion, the District of Utah is more congested than this District due to the relative number of judgeships. *See* Administrative Office of the U.S. Courts, *Federal Court Management Statistics—Profiles*, http://www.uscourts.gov/file/23316/download, (Sept. 30, 2017) (showing 263 pending cases per judgeship in the District of Columbia and 486 cases per judgeship in the District of Utah). However, the same was also found true in both *Pool* in 2013, 942 F. Supp. 2d at 101-102, and *Jewell* in 2014, 69 F. Supp. 3d at 44, and neither of those courts found the matter to be weighty, much less dispositive. As in those cases, the Court can conclude that "this one factor, on its own, does not outweigh all of the others." *Id.* at 44.

The remaining public interest factor is the interest in avoiding multiple lawsuits proceeding in different forums on the same transaction or event. Defendants have moved to consolidate the cases related to this Monument into a single action—and are simultaneously moving to transfer them (as well as two other cases raising similar challenges to the President's Proclamation addressing the Grand Staircase-Escalante National Monument). Defendants are

---

[3] The District of Utah regularly decides cases involving national monuments located in Utah. *See, e.g., Utah Ass'n of Counties v. Bush*, 316 F. Supp. 2d 1172 (D. Utah 2004) (upholding the President's authority to designate Grand Staircase-Escalante National Monument), *appeal dismissed* 455 F.3d 1094 (10th Cir. 2006); *see also, e.g., SUWA v. U.S. Dep't of Interior,* No. 2:13-CV-01060-EJF, 2015 WL 4389580 (D. Utah July 15, 2015); *Kane Cty. v. United States*, No. 2:08-CV-00315, 2013 WL 1180764 (D. Utah Mar. 20, 2013) (action to quiet title to rights of way in Grand Staircase-Escalante National Monument), *rev'd in part* 772 F.3d 1205 (10th Cir. 2014); *SUWA v. Sierra*, No. 2:07-CV-00199DAK, 2008 WL 3925216 (D. Utah Aug. 20, 2008) (suit challenging suspension of oil and gas leases on monument); *Stewart v. Kempthorne*, 593 F. Supp. 2d 1240 (D. Utah 2008), *aff'd,* 554 F.3d 1245 (10th Cir. 2009) (suit challenging grazing permit determination in monument).

not aware of any other litigation concerning this Monument, and Plaintiffs have not designated any such litigation as a related case.

**D.    The Private Interest Factors Carry Little Weight.**

The private interest factors relevant to a motion to transfer are: "1) the plaintiff's choice of forum; 2) the defendant's choice of forum; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses . . . ; and 6) the ease of access to sources of proof." *Bader*, 63 F. Supp. 3d at 34 (citation omitted). The overall importance of the public interest factor concerned with deciding local controversies at home, in conjunction with the other relevant private interest factors, tip the scales in favor a forum in Utah, which would be the more convenient forum to the extent any fact-finding is needed and appropriate in this case.

1.    Plaintiffs' choice of forum should receive little weight.

Plaintiffs' choice of forum is entitled to relatively little weight in the circumstances here. While courts generally afford deference to the plaintiff's choice, less deference is given when the plaintiff has substantial ties to the proposed transferee district. *See PSC*, 893 F. Supp. 2d at 54 (citing *Airport Working Grp. of Orange Cty., Inc. v. Dep't of Def.*, 226 F. Supp. 2d 227, 230 (D.D.C. 2002) (noting less deference is accorded when "Defendants seek transfer to the plaintiffs' resident forum" (internal quotation marks omitted)). Although three Plaintiff organizations have headquarters in the District of Columbia, the majority of Plaintiff organizations are located in Western states much closer to Utah than the District of Columbia— and one of them, Southern Utah Wilderness Alliance, is based in Utah. Moreover, all of the Plaintiffs expressly allege organizational or member activities occurring in Utah. Compl. ¶¶ 18, 21, 25, 29, 34-35, 37, 39, 40-43, 45-46, 48-49, 52. The fact that so many Western-based organizations have taken interest in the challenged actions is telling—ultimately, this case is about land in Utah, which primarily concerns those located in Utah. *See, e.g., id.* ¶ 30 (alleging

12

that Plaintiff Grand Canyon Trust's "members and staff live and work throughout the Colorado Plateau, in Utah, Colorado, Arizona, and New Mexico); ¶ 35 (alleging that Plaintiff "Great Old Broads has over 8,000 members and supporters, many of whom reside and/or engage in recreational activities in Utah"); ¶ 38 (alleging that Plaintiff Western Watersheds Project, "[h]eadquartered in Hailey, Idaho, . . . has field offices and members throughout the West"); ¶ 40 (alleging that Plaintiff Sierra Club has a Utah chapter with "thousands of members"); ¶ 46 (alleging that Plaintiff Center for Biological Diversity "has a long history of environmental advocacy within the southwestern United States generally . . ."). Finally, many of Plaintiffs' counsel are located in the Western United States, rather than in the District of Columbia. Compl. at 61-62. Because of these numerous connections to Utah and the surrounding states, the District of Utah will be a more convenient forum for this litigation. As a result, Plaintiffs' selection of the District of Columbia should receive minimal deference.

Moreover, even though, as discussed below, the decision Plaintiffs are challenging has a connection to the District of Columbia, the deference that would otherwise be afforded to Plaintiffs' choice of forum is diminished by the fact that any effects of that decision primarily will be felt in Utah—not in the District of Columbia. *See* Compl. ¶¶ 134-75. And although officials based in Washington may have participated in the process leading up to the President's Proclamation, the President announced and signed the Proclamation in Utah, and it is local officials in Utah offices who will be charged with implementing any changes to the management of the land, which serve as the basis of Plaintiffs' claims of injury. *Cf. Pool*, 942 F. Supp. 2d at 99. Indeed, Plaintiffs' Fifth Claim for Relief expressly alleges that BLM and USFS will act unlawfully in Utah, by managing former Monument lands inconsistently with the 2016 Presidential Proclamation that originally created the Monument. Compl. ¶¶ 203-05.

Accordingly, any weight owed to Plaintiffs' choice of forum is minimal, and yields to the heavy weight given to the local interest in Utah.

> 2. Defendants' choice of forum is consistent with the strong local connection to Utah.

Defendants' choice of forum also factors into the venue analysis under § 1404(a) and further tips the balance in favor of transfer. This Court accords weight to the defendant's choice "if the defendant presents legitimate reasons for preferring to litigate the case in the transferee district, . . . where the harm from a federal agency's decision is felt most directly in the transferee district," or when "the economic and environmental impacts of the Project will be felt most acutely" in the Defendant's choice of forum. *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 313 (D.D.C. 2015) (internal citations and quotation marks omitted).

Here, all three circumstances identified in *Gulf Restoration Network* are present. First, Defendants have a legitimate reason for preferring to litigate this case in Utah: President Trump, who is the first named defendant, has recognized the importance of having decisions about federal land in Utah be made in Utah. *See* Background, *supra.* Consistent with this, as discussed above, courts in this District have recognized the importance of having lawsuits about federal land be heard where the lands are located. *See, e.g.*, *PSC*, 893 F. Supp. 2d at 54; *Jewell*, 99 F. Supp. 3d at 116. Second, as detailed above, *see* Part C, *supra*, the decision challenged in this case will be felt most directly in Utah. And third, the harms allegedly associated with the decision, as stated by Plaintiffs themselves, would be suffered more acutely in that forum should they occur. Defendants' choice of forum in Utah thus weighs in favor of granting this motion to transfer.

14

3.  <u>Plaintiffs' claim arises in Utah and the District of Columbia.</u>

In determining where a claim arose, "courts generally focus on where the decision-making process occurred." *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009) (citation omitted).  Here, the decision-making process for the Proclamation actions occurred in both the District of Columbia and Utah.  The President and the Secretary of the Interior were involved in the decision-making process, and that process occurred, in part, in the District of Columbia, where their offices are located.  However, the decision-making process also occurred in Utah.  The Secretary travelled to Utah for the express purpose of making a more informed recommendation to the President about the Monument, and President Trump signed the Proclamation modifying the Monument in Utah.  Thus, while Defendants do not dispute that some of the decision-making process occurred in the District of Columbia, important aspects of the process also occurred in Utah.

Because the decision-making process for the Proclamation occurred in both the District of Columbia and Utah, it is important to focus on where the alleged impacts of the challenged decision will occur when analyzing this factor.  *See Ctr. for Envtl. Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 357 (D.D.C. 2014) (factor regarding where claim arose favored transfer because "[w]hile decision-makers may be located in Washington D.C., the decisions themselves concern a government project that affects the diversion of water flows in rivers in California"); *M & N Plastics, Inc. v. Sebelius*, 997 F. Supp. 2d 19, 24 (D.D.C. 2013) (factor regarding where the claim arose "clearly favors venue in Michigan" because all plaintiffs were in Michigan, the effects on the plaintiffs would be felt in Michigan, and the only event at issue in the District of Columbia was the issuance of the contraceptive mandate).  Because the decision-making process occurred in both forums, and the alleged impacts of the decision will be

15

felt in Utah, this factor is either neutral or favors transfer.

      4.  <u>Evidentiary issues are neutral, or if anything, weigh in favor of transfer.</u>

The convenience of witnesses and access to proof factors play little role here because Plaintiffs' challenges to the President's Proclamation present a pure question of law, and their challenges will not require witnesses or fact discovery. Any future actions of agency officials would be reviewed, if at all, on the basis of an administrative record under the Administrative Procedure Act, 5 U.S.C. §§ 701-706. As a result, the "convenience of witnesses . . . has less relevance." *SUWA v. Norton*, 2002 WL 32617198, at *4.[4]

For the foregoing reasons, Defendants' motion to transfer should be granted.

Respectfully submitted this 18th day of January, 2018,

JEFFREY H. WOOD
Acting Assistant Attorney General

   */s/ Romney S. Philpott*
Romney S. Philpott
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
999 18th St., #370
Denver, CO 80202
Phone:  303-844-1810
Fax:  303-844-1350
E-mail:  Romney.Philpott@usdoj.gov

Judith E. Coleman
U.S. Department of Justice,
Environment and Natural Resources Division

---

[4] These factors would become relevant, however, and would favor transfer to Utah, if Plaintiffs seek preliminary injunctive relief, or if their standing is called into question at a later stage of this case. In those circumstances, witness testimony may become necessary, for example if Defendants seek to present testimony from local federal land managers about implementation of the Proclamation, or to cross-examine Plaintiffs' members to test their allegations of injury at this time. In any event, on balance, Utah's strong connection to this dispute outweighs any weight given to the private interest factors.

Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Phone:  202-514-3553
Fax:  202-305-0506
Email:  Judith.Coleman@usdoj.gov

Attorneys for Federal Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2018, I electronically filed the foregoing document and its attachments with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all parties.

*/s/ Romney S. Philpott*